Appellant was convicted of theft of property in the first degree and sentenced to ten years in the penitentiary. At arraignment, in the presence of court-appointed counsel, he interposed a plea of not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
On the afternoon of July 5, 1980, at approximately 5:00, the victim, Herschel Goodman, was engaged in the sale of produce from his truck on Redbud Street in the City of Florence, Alabama. While he was dispensing his produce to customers gathered around his truck a young black male came up behind him, grabbed his billfold from his left rear pocket and ran. The victim chased the thief several yards with his open knife and during the chase another young black man tripped him and the thief got away. Just before the thief approached Mr. Goodman he was observed by Goodman coming toward his truck. He had seen him on other occasions and had previously sold him produce but he did not know his name. Mr. Goodman also knew he lived in that neighborhood.
After being tripped Mr. Goodman returned to his truck where he learned the thief's name from one of the people who had purchased some grapes from him and who had witnessed the incident. Mr. Goodman called the Police Department and reported the theft of his wallet. A few minutes later the police arrived at the scene and got a description of the thief. The officers went to the house of appellant and interviewed him. Appellant was most cooperative and voluntarily showed the officers his pocketbook which contained $78.00, and voluntarily accompanied the officers to the station house where he was photographed. Appellant was not charged at that time and was released on his own recognizance as Mr. Goodman told the officers he only wanted his money returned to him.
While the officers were interviewing appellant Mr. Goodman arrived at the house *Page 165 
and positively identified appellant as the man who stole his wallet and ran away. He also made a positive in-court identification of appellant as the thief who grabbed his wallet which contained approximately $500.00 of various denominations, including two $100.00 bills, and testified he had not seen it since it was taken from him.
Officer Virgil Wilson of the Florence Police Department testified he was on duty on July 5, 1980, and he and his partner, Jack Carr, responded to a call that a larceny had been committed at 220 Redbud Street. When they arrived Mr. Goodman told the officers he had been approached by a black male who had come up behind him and removed his wallet from his left rear pocket. Officer Wilson further stated that Mr. Goodman informed him that he had chased the man but could not catch him; that Mr. Goodman told him that he knew the man by sight but did not know the man's name. However, Officer Wilson stated that the description Mr. Goodman gave him fit appellant Robert Carroll. After receiving this description the officers went to appellant's home located on the corner of Redbud and Mobile Streets. Appellant answered the door and the officers told him they wanted to talk with him about the larceny of Mr. Goodman's wallet. While they were on the porch talking with appellant Mr. Goodman arrived and identified appellant as the individual he had been chasing. As a result of this identification the officers requested appellant go with them to the police station where they continued to question him about the incident. Appellant was not arrested on this occasion and Officer Wilson drove appellant back to his house after appellant denied any involvement in the theft of the wallet and stated that he had nothing to hide.
The testimony of Mr. Richard Nance further corroborated that of Mr. Goodman. According to Mr. Nance he was driving on Redbud Street on the afternoon of July 5, 1980, on his way home from work and saw Mr. Goodman, "the vegetable man," running after appellant with a knife. Nance testified that the two men ran directly in front of his car as he was driving up the hill and that he watched them until they disappeared between two houses. He saw a wallet in appellant's hands. Mr. Nance further testified that he had known appellant about 21 years and had gotten a good look at him on this occasion. He was positive that appellant was the man he saw with the wallet in his hands as he was being chased by Mr. Goodman.
Appellant did not testify in his behalf but called four witnesses to testify for the defense. Appellant's wife, Dorothy Carroll, Helen Patterson, Ronnie Cole and Debbie Pace testified on behalf of appellant. Although Dorothy Carroll and Ronnie Cole both testified they were with appellant at his house after Mr. Goodman's wallet had been stolen, these witnesses were unable to say they were with appellant at the time the wallet was snatched from Mr. Goodman's pocket.
There was no motion to exclude the State's evidence and no request for the affirmative charge. The sufficiency of the evidence was raised in a motion for a new trial which was overruled and denied.
Initially, appellant contends the trial court erred in permitting the admission of evidence obtained as a result of an illegal search and seizure. More specifically, it is asserted that, because appellant did not knowingly and voluntarily give his consent to be searched on July 5, 1980, any evidence obtained therefrom was required to be excluded from the evidence. At the outset, it must be noted that, although appellant did file a motion to suppress, such motion was never ruled upon by the trial court and, therefore, presents nothing to this court for review. Harris v. State, 57 Ala. App. 558,329 So.2d 618; Dickerson v. State, 43 Ala. App. 694, 200 So.2d 487.
Appellant also contends the trial court committed reversible error in allowing hearsay evidence to be introduced into evidence. The victim in this case did not know the name of the man who grabbed his wallet.
From the record:
 "Q. You say you did not know Mr. Carroll by name at the time this happened? *Page 166 
"A. No, I didn't know him by name, no.
 "Q. How did you know who to tell the police to look for?
 "A. I asked that woman that I was weighing the produce up for who it was.
 "Mr. Burdine: We'll object to any questions or answers regarding anything that that woman related to him.
 "The Court: Sustained. I will let you ask the question if whoever that person was — was identified as Robert Lee Carroll by someone there. That's not to prove the truth of the statement anyway. Go ahead.
 "A. So I asked that woman who it was and she told me it was Robert Carroll.
 "Mr. Burdine: Now, we'll object to that and ask that the jury be instructed to disregard that statement as purely hearsay.
 "The Court: I'll sustain the objection and disregard it, Ladies and Gentlemen."
During cross-examination of Mr. Goodman defense counsel elicited the following testimony:
 "Q. Did you ever ask anybody who it was that took your billfold? Do you recall ever asking anybody who took your billfold?
 "A. I asked that woman while I was selling the grapes there. I didn't know Robert Carroll by name. I knew him when I saw him, but I didn't know him by name. There's a lot of them over there I don't know by name. I know them when I see them.
"The Court: What did she tell you?
"The Witness: She told me it was Robert Carroll.
"Mr. Burdine: We'll object to that.
"The Court: Overruled."
It is settled law that a statement which is useful in identifying a person, time, place or other thing is admissible for that purpose as a hearsay exception. See Gamble, McElroy's Alabama Evidence 3rd Ed., p. 610, Section 273.01, and cases there cited.
And, too, the trial judge was within his discretion in posing questions to Mr. Goodman. In Sprinkle v. State, Ala.Cr.App.,368 So.2d 554, writ quashed, Ala., 368 So.2d 565, this court held:
 "The trial judge is more than a mere moderator and it is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of witnesses. Thus he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality."
Appellant's third contention for a reversal is an assertion that the trial court improperly commented on the evidence in his oral charge to the jury when it stated:
 "Now, it's been a fairly short case, but a number of witnesses have testified for both the State and the defendant. I don't know that the testimony is particularly in conflict. It might appear to be in conflict. I won't comment on that. I do say to you that if there's any way you can reconcile the testimony of every witness so that you can find that they're all speaking the truth, then you do that. But if you find the testimony is in direct conflict to the point that you just can't find that everybody's telling the truth, then you're going to have to simply determine who to believe and what to believe or what portions of somebody's testimony to believe. That's the purpose of the jury. And to help you in determining what to believe and who to believe, there are certain guidelines or certain things you can go by. And first of all, and the most useful tool you have is your good common sense. When you go in that jury room, don't leave your common sense out here in the jury box. Carry it in there with you and apply it to the facts — Apply it to this evidence as you've heard it. You know what goes on between people. You have experiences. You have common knowledge of everyday affairs. That's what I'm saying to you — that you can use and weigh this evidence. Another thing you can use, ladies and gentlemen, when you get ready to weigh the *Page 167 
testimony and decide who to believe and what to believe, is whether or not any witness in this case has an interest, direct or otherwise, in the outcome of this case. If you find that a witness is interested in the outcome of this case — has an interest in how it comes out — then you can weigh that witness's testimony in that light. If you find further that any witness has just told you a falsehood, corruptly, intentionally, about any part of that witness's testimony, then you can just throw that witness's testimony out completely if you want to. You don't have to. You can believe the part that you think is truthful and throw out the untruthful part, or you, in your discretion, may disregard the entire testimony of that witness if you want to. As I say, you don't have to, but you may."
The cases relied upon by appellant in support of his contention that the trial court's oral charge invaded the province of the jury are simply not in point and do not support such contention. A mere reading of the above quoted part of the oral charge reflects beyond any doubt that there was no invasion of the province of the jury. The rule is that no part of the oral charge is to be tested in isolation, but the court's oral charge is to be considered as a whole. Brooks v.State, Ala.Cr.App., 353 So.2d 1, and cases therein cited.
Appellant's final contention is predicated on a remark made by the prosecutor during his closing argument to the jury wherein he stated:
 "Mr. Jones: Everybody around that truck said, `That was Robert Lee Carroll. We all know him.'
 "Mr. Burdine: We object to that. It's not in evidence.
 "The Court: Well, you remember what's in evidence, ladies and gentlemen, concerning what was said on that occasion, and it's not for me to say what it was. You remember what it was, because that's your job and not mine."
A review of the transcript of the evidence in this case clearly shows the trial court properly allowed the victim, Mr. Herschel Goodman, to testify how, and from whom, he learned the name of his assailant. This testimony was not offered to prove the truth of the matter asserted but solely for the limited purpose of identifying appellant.
The test of a prosecutor's legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury. Ala. Dig. Criminal Law Key No. 720 (1).
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none.
It took the jury only thirty-five minutes to return a verdict of guilty as charged. At the sentencing hearing the trial court pointed out to appellant that this was his third felony conviction and that if he had been sentenced under the Habitual Offender Act the term of imprisonment could have been life.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.