The appellant, Calvin Lamar Ward, was indicted for "intentionally damaging a building of Betty Ward, by starting or maintaining a fire or causing an explosion, in violation of § 13A-7-42 Code of Alabama 1975." The jury found appellant "guilty as charged" in the indictment, and the trial judge set sentence at fifteen years' imprisonment. From the overruling of appellant's two motions for a new trial, the appellant prosecutes this appeal.
Prior to the reception of any testimony defense counsel made a motion to exclude certain evidence, which he styled a "motion in limine." Defense counsel advised the court that two fires occurred at Betty Ward's residence, one on November 2, 1981, in which the kitchen was damaged and the other on November 25, 1981, in which the house was totally destroyed. Defense counsel argued that the two fires were not related and requested that no evidence of the November 2, 1981, fire be allowed since appellant was charged with the fire that occurred on November 25, 1981. The trial court declined to rule on defense counsel's motion until this issue came up at trial.
During the questioning of the first witness at trial, further argument was heard on said motion in a hearing outside the presence of the jury. After hearing argument from defense counsel and the prosecution, the trial court overruled said motion and the prosecution was then allowed to elicit testimony as to the earlier fire.
Betty Ward, appellant's wife, testified that she and appellant had been living together since their re-marriage in 1971 and were living together at the time of the trial. She testified that she and her husband had contacted a builder about re-building their home after the fire that destroyed their home on November 25, 1981.
Stanley Early testified that he was the manager of "The Associates," a lending institution. He testified that appellant had three loans with his company. The first loan was for $24,809 which was secured by a mortgage on appellant's home. Appellant's wife also signed the loan. "The Associates" made another loan to appellant and his wife for $40,500. A third loan for $410 was also made to appellant. Mr. Early testified that appellant was delinquent on his payments.
Beverly Crawford testified that she worked for appellant at the Dothan Truck Stop. While discussing the bad financial situation of the truck stop, Ms. Crawford stated that appellant told her that he "was going to have to do something, he had to get some money quick." She said he told her that if she saw any orange flames behind her parents' home, not to bother calling the fire department because it would be his house. Appellant also told Ms. Crawford to give one Frankie Brannon some money.
Frankie Brannon testified that appellant contacted him about burning his house. Mr. Brannon stated that he and appellant, along with Johnny Frank Spain and Greg Woods, went to K-Mart, where appellant bought a torch that appellant wanted them to use in setting the fire. Appellant promised to pay him $450 to burn the house. Mr. Brannon testified exactly how he set the house on fire. Mr. Brannon stated that the day after the fire on November 25, 1981, a waitress at the Dothan Truck Stop gave him fifty dollars. He stated he later saw appellant, who gave him one hundred dollars and told him he "did a fine job."
Sergeant Mike Gilley of the Houston County Sheriff's Department testified that he took a statement from appellant after the November 25, 1981, fire. Sergeant Gilley stated that appellant told him he saw Frankie Brannon and two boys at K-Mart the night of the second fire. Appellant also told him that he did not give Mr. Brannon any money.
At trial, Sergeant Gilley read into evidence a tape-recorded conversation between appellant and Shirley Brannon, wife of Frankie Brannon. In this conversation, Mrs. Brannon told appellant that her husband was going to talk to the fire marshal if appellant did not send him money. Appellant responded by telling Mrs. Brannon *Page 1229 
that he would take care of Frankie and would hire a lawyer for him. Appellant told her to tell Frankie to "Stick to his story" and "Keep it quiet."
Greg Woods testified that he went with Frankie Brannon and Johnny Frank Spain to K-Mart on November 25, 1981, and there met appellant. Appellant and Brannon went into K-Mart and appellant bought a propane torch. Mr. Woods then described how later that night he dropped Brannon and Spain off at appellant's house with a jug of gasoline. The next day he went with Spain and Brannon to the Dothan Truck Stop where Brannon was paid fifty dollars.
Malinda Dickens testified that she was employed at the Dothan Truck Stop on November 25, 1981, and that the following day, Brannon came in, told her to call appellant, and that appellant told her to give Brannon fifty dollars.
Fred Gulledge, a home builder, testified that he had been contacted by appellant after the November 25, 1981, fire about building a house.
Alex Peaden testified that appellant told him prior to November 25, 1981, that he was "needing money." Appellant asked him to set up an accident where Peaden would run a stop sign and hit appellant so that appellant could sue Peaden's employer, Brungart Equipment Company. Mr. Peaden stated that appellant told him "he was going to get money one way or the other" and that "he didn't care how he had to do it, but, he'd do it." Appellant said, "If he had to burn something or do something he would do it."
Thomas Shirley with the State Fire Marshal's Office testified that he investigated the November 25, 1981, fire. He testified that the burn pattern was indicative of flammable liquids and there were no shorts or problems in any of the wiring. He stated that the timber in the house showed signs of having been eaten by termites.
Mr. Shirley stated that he also investigated the financial situation of appellant and his wife and found that they were heavily in debt. He also found that the deed to the property on which their house was located was in Mrs. Ward's name. However, the insurance on the house and the mortgage were in both Mrs. Ward's and appellant's names.
Jim Leonard, an insurance adjustor, testified that he estimated the damage done to appellant's house by the November 2, 1981, fire. He testified that the insurance company paid $12,432 less a hundred dollar deductible for this loss. As to the fire that occurred on November 25, 1981, the insurance company paid $62,336.
Appellant contends that the trial court erred in failing to exclude testimony of the prior unrelated fire of November 2, 1981, at his and his wife's residence. Appellant contends that since no evidence was offered connecting either appellant or his wife with the first fire, the trial court erred in overruling his "motion in limine," or in the alternative, his motion for new trial. Appellant relies on Moreland v. State,373 So.2d 1259 (Ala.Cr.App. 1979), which states:
 "of a person for the alleged commission of a particular crime, evidence of other acts which of themselves constitute distinct and independent offenses is not admissible. . . . [B]efore evidence of a second fire is introduced, there must be some legitimate evidence which would at least furnish a reasonable inference of the involvement of the accused."
(citations omitted)
Moreland, supra, at 1261.
Appellant cites to this court a correct proposition of law, but one that is inapplicable to the case at bar. UnlikeMoreland, the State in the case sub judice never introduced evidence showing directly or by inference that the first fire on November 2, 1981, was the result of criminal activity. Furthermore, there was no argument by the prosecution implying the same. As such, the prior fire cannot be said to constitute an "offense" to which the general exclusionary rule applies.
The trial court is afforded broad discretion in passing on the admissibility of evidence, and its determination will not be *Page 1230 
disturbed without a clear showing of abuse. United States v.Dothard, 666 F.2d 498 (11th Cir. 1982).
Appellant further contends that his conviction should not stand because of the conduct of Mr. Valeska (the assistant district attorney who prosecuted the case) subsequent to his trial and motions for new trial. The record, as supplemented pursuant to Rule 10 (f), A.R.A.P., shows that in closing argument to the jury, Mr. Valeska made a statement assuring the jury that Frank Brannon, appellant's co-conspirator and chief witness against him, would be prosecuted to the fullest extent of the law. Mr. Valeska's statement was that "Frankie Brannon faces the Habitual Offender Law in the State of Alabama . . . we have made him no promises . . . Frankie Brannon will get his day in court; Spain and Woods have already had theirs . . . he will be prosecuted . . . you can take my word that he will be prosecuted."
The supplemented record also shows that said Frank Brannon was charged with second degree arson. Subsequent to appellant's trial, Mr. Brannon pleaded guilty to the charge against him and was sentenced to five years in the penitentiary. However, on October 27, 1982, Mr. Brannon's sentence was set aside after it was brought to the attention of the court that Mr. Brannon had been improperly sentenced since he was subject to the provisions of the Habitual Felony Offender Act. Ala. Code §13A-5-9 (Supp. 1981); Watson v. State, 392 So.2d 1274
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). Thereafter, on February 24, 1983, the indictment charging Frank Brannon with second degree arson was nol-prossed on motion of the state.
Appellant argues that the above statement of Mr. Valeska was made to bolster the credibility of Frank Brannon, a twice convicted felon. Furthermore, since defense counsel had no way to determine whether Mr. Valeska's promise would be carried out, there were no grounds on which to object to the prosecutor's statement. We disagree.
The argument to the jury set out above was improper in the first place since Mr. Valeska clearly argued facts not in evidence. No evidence was ever introduced at trial concerning Mr. Brannon's fate after the completion of appellant's trial. The test of a legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury. Carroll v. State, 405 So.2d 163
(Ala.Cr.App. 1981). Since no objection was initially raised to this improper comment at trial, the issue of whether Mr. Valeska's promise was ever carried out is not preserved for review. Moore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982).
A decision on a motion for a new trial rests largely within the discretion of the trial court, and, in reviewing such decision, this court will indulge every presumption in favor of the correctness thereof. Woodard v. State, Ala.Cr.App.,401 So.2d 300.
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
Since his conviction, he was involved in an automobile accident in which he received serious and permanent brain damage to the extent that he has been declared by the Probate Court of Houston County to be completely incompetent and has to have personal help and supervision at all times. In short, he is of unsound mind. His wife has been appointed guardian of his person and estate.
A petition was filed with the Circuit Court of Houston County seeking to reduce his sentence from 15 years to 10 years, and Judge Storey is now without jurisdiction to give him any relief because he has lost jurisdiction of the case. The hearing was held before Judge Storey in which he made the following findings:
 "(5) That it is the finding and judgment of this Court that the Defendant, Calvin Lamar Ward, received injuries to his brain on October 7, 1982, which have *Page 1231 
rendered him of unsound mind and incapable of taking care of himself or conducting or managing his affairs. It is the further finding and judgment of this Court that Defendant's brain damage is probably permanent and that the Defendant requires the constant attention of a competent person.
 "(6) That it appears to the Court that the Defendant would not comprehend or understand why he is incarcerated or the fact that he was incarcerated.
 "(7) That it is the Judgment and finding of this Court that the Defendant is totally incompetent both mentally and physically.
 "(8) That under the facts and circumstances of this case, the Court finds that due to the injuries sustained by the Defendant, his present mental condition, and the improbable chances of any meaningful improvement of his condition, incarceration of the Defendant would most likely not be in the best interest of the State of Alabama and to allow the Defendant to be placed on probation would not be incompatible with the welfare of society."
Judge Storey has filed in this court an order indicating that, if this case is remanded to the Circuit Court of Houston County, Alabama, steps will be taken to reduce his original sentence of 15 years to 10 years or less and place him on probation in the custody of his legally-appointed guardian.
The ends of justice would be best served by this court remanding this case to the Circuit Court of Houston County, so that court will be re-invested with jurisdiction, power and authority to deal with the merits of this case and to impose a sentence, to the end that this insane man will not be incarcerated in the penitentiary.
JUDGMENT OF CONVICTION AFFIRMED; CAUSE REMANDED FOR SENTENCING.
All the Judges concur.