Violation of Birmingham City Ordinance 36-28 as amended (malicious injury to property); sentence: $500 fine, thirty days hard labor and court costs.
The appellant was tried and convicted on two separate charges of malicious injury to property; one against Richard Watkins which occurred on December 7, 1978, and the other against Kenneth Jones which occurred on December 9, 1978. In both cases the appellant was charged with shooting out the windows of the victims' vehicles which were parked at Watkins' residence in Birmingham.
The appellant made no motion to exclude the City's evidence, no request for the affirmative charge, and no motion for a new trial challenging the sufficiency of the evidence. Consequently, a further recitation of the facts is unnecessary.
 I
The appellant contends that the trial court erred in overruling his motion to dismiss the City's case on the ground of a material variance between the complaints and proof. The appellant's motion asserted only that the City's complaints used the name of Billy Hembree, whereas his name was actually Billy Hembree, Jr. On appeal he has expanded that ground to complain that not only was the suffix Jr. omitted in the complaints, but his middle initial was likewise omitted and further that the complaints failed to allege that his name was "otherwise unknown." The appellant further contends that since the City's complaints were not filed in the circuit court *Page 666 
until the day of trial he has not waived the right to raise the misnomer by his failure to file pleas in abatement.
The appellant's oral motion in this regard was not made until after a plea to the merits, after seventeen witnesses had testified (consisting of 265 pages in the record), and not until after both the City and the appellant had rested their cases. The trial court's ruling was, "Well, at this stage of the game, I'll overrule."
The defect complained of was not one that required the taking of testimony before being discovered by the appellant. Certainly he knew his own name and could have raised the issue prior to pleading to the merits of the case. After a plea to the merits, the appellant's claim of misnomer comes too late.Wilson v. State, 251 Ala. 679, 39 So.2d 254 (1949); Ward v.State, 242 Ala. 307, 6 So.2d 394 (1942); Fibbs v. State,52 Ala. App. 232, 291 So.2d 167 (1974); §§ 15-15-40, -40, Code of Ala. 1975.
The only ground for dismissal raised in the trial court below was the absence of the suffix Jr., and we therefore will limit our discussion only to that ground raised in the trial court and ruled upon by the trial judge. Frazier v. State,53 Ala. App. 492, 301 So.2d 256 (1974). It has been held that the word "Junior" or "Jr." are merely matters of description and are not part of a person's legal name. An indictment omitting such a suffix is not subject to a plea of misnomer. Taylor v.State, 282 Ala. 567, 213 So.2d 566 (1968). As no error would result from the omission of the suffix "Jr." in a felony indictment, certainly no error results from its omission in a complaint charging the mere violation of a municipal ordinance. See also: Murry v. State, Ala.Cr.App., 367 So.2d 985 (1979), cert. denied, Ala., 367 So.2d 989.
 II
The appellant contends that the trial court erroneously limited his right to confront and cross-examine witnesses by placing a twenty minute limit on examination of each witness by the City and by the defense.
The trial court made its ruling after the City's first witness testified for approximately two hours (according to the appellant), much of which was repetitious. Neither side exceeded the trial court's time limitation, nor was the trial court compelled to enforce its ruling during the course of the trial.
The right of a defendant to confront and cross-examine witnesses is guaranteed by Article I, § 6, Constitution of Ala. 1901, by § 12-21-137, Code of Ala. 1975, and by the Sixth Amendment to the United States Constitution. Any limitation on that fundamental constitutional right will be closely scrutinized by the appellate courts. Ball v. State, Ala.Cr.App., 337 So.2d 31 (1976), cert. quashed, Ala.,337 So.2d 39. However, it has repeatedly been held that the latitude and extent of cross-examination is a matter within the sound discretion of the trial court and is reviewable on appeal only for prejudicial abuse. Turner v. State, 289 Ala. 97,265 So.2d 883 (1972), and cases cited therein. On appeal the party claiming an abuse of such discretion bears the burden of persuasion. Connell v. State, 294 Ala. 477, 318 So.2d 710
(1974).
In the instant case the appellant has failed to show us a single instance where the trial court prevented him from continuing his cross-examination of a witness of any material point which he felt necessary for the presentation of his case. The appellant would have a stronger argument for reversal if the record disclosed any instance where the trial court enforced the twenty minute limitation to cut off his cross-examination of a witness. However, after the trial court's limitation was announced, the record reflects a thorough and concise examination of each witness by both the City and the appellant. If anything, the ruling resulted in a more efficiently tried case and cut out much of the repetitious questioning of witnesses and repeating of their answers by counsel which is so prevalent in many records reviewed by this court. We, therefore, find no error in the trial court's action to warrant a reversal on this ground. *Page 667 
 III
The appellant argues that the trial court on two occasions erroneously excluded testimony which would have illustrated bias, prejudice or interest against him on behalf of the prosecution witnesses.
 A
Counsel for appellant asserts that the trial court erroneously denied him the right to examine Billy Hembree, Sr., concerning the circumstances surrounding the loss of the witness' hand and his testifying before the Bessemer Division Grand Jury. The record reflects the following concerning an offer of proof made by the appellant in camera:
"THE COURT: See if I've got these facts straight.
 "You want to put this present witness on, Mr. Hembree, Sr., to show that his hand was shot off by a gun in July of '78; that on December the —
 "MR. HUFFSTUTLER: I want to also show that Mr. Hembree's hand was shot on December [July] 23, 1978. On July 22, 1978, the day before, Billy Hembree was involved in a fight with Ricky Watkins. Between July 23, 1978, and until the time of the Grand Jury there had been threatening phone calls made by Ricky Watkins to Mrs. Hembree concerning the health and well-being and threats to do bodily harm against not only Mr. Hembree, Sr., but Billy Hembree, Jr. That on December 7, 1978, they went to testify. Mr. Hembree went and testified at the Grand Jury in Bessemer.
"THE COURT: Against —
 "MR. HUFFSTUTLER: Against Randall Revis, who has been designated a cousin of Jamie Barrett, who has been designated as dating Mary Tunello at this time.
 "Mr. Hembree also — and I think this will be admissible testimony. He's going to testify to alibi to certain nights.
 "THE COURT: The alibi is all right. Now, to strengthen what you say is material — which I don't think it is — this guy Revis was over at the house of Watkins on one of these occasions. What day or night, do you remember?
"MR. HUFFSTUTLER: The 12th.
 "THE COURT: Well, I sustain the objection. The City objects.
"MR. HUFFSTUTLER: I except.
 "THE COURT: I think it's too remote. Not only remote, it's immaterial in my humble judgment.
 "MR. HUFFSTUTLER: We would object on the grounds his testimony would show the bias and prejudice of any and all witnesses on the other side and an interest that they have in the case of doing whatever damage they can to Billy Hembree, Jr.
"MR. MAC MAHON: We object.
 "THE COURT: I'm well aware that all appellate courts say bias and prejudice can come in, but there is a point at which it's got to stop, and in my humble judgment it's got to stop here. We can't get into the shooting of the father by someone else who at best is remotely mixed up with Watkins' people. I sustain the objection."
The appellant was apparently attempting to show that in July of 1978 his father's hand was shot off, presumably by Randall Revis, a cousin of one Jamie Barrett who was dating Mary Tunello, a defense witness in the instant case who was formerly married to the appellant. The fact that the appellant's father testified at a grand jury proceeding against Randall Revis would indicate some bias on the part of Revis against the appellant's father, and vice versa. However, Revis was never called as a witness to testify in the instant case. Normally a party shows the interest, bias or prejudice of a witness by eliciting testimony from him on cross-examination. Gamble,McElroy's Alabama Evidence, § 149.01 (3d ed. 1977); Frazier v.State, Ala.Cr.App., 365 So.2d 339 (1978). From the record it appears that the appellant was attempting to show some bias on the part of witness Mary Tunello by connecting her in some manner with Randall Revis who held a grudge against appellant's father. If that were the point the appellant was trying to make, it *Page 668 
appears that he was attempting to show the bias of his own witness and was attempting to do so through a very remote means.
Regardless of the method employed to prove bias or prejudice of a witness, the testimony going to such proof must be material, relevant, and not remote to the issues presented. Otherwise, a trial court is not in error in exercising its discretion to exclude such evidence. Gamble, § 21.01 (1)(2), supra; Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216 (1923);Smitherman v. State, 33 Ala. App. 316, 33 So.2d 396 (1948). In the instant case the inferences to be drawn from the proffered testimony were too speculative as to illustrate a reasonable connection between that testimony and a legitimate purpose for which it could be introduced. The burden was on the appellant to make clear to the trial court and to this court on appeal exactly how the proffered testimony would show a bias, interest or prejudice against him on the part of some specific witness. He has failed to do so.
 B
The appellant's next assertion concerns itself with the trial court's prior ruling favorable to him whereby police officer J.D. Jones was allowed to testify as to the arrests of two other individuals connected with the December 12 shooting incident for which the appellant was charged and tried, but acquitted. That testimony was initially received over the City's objection that it was hearsay. Shortly thereafter the trial court reversed its ruling and instructed the jury to disregard the testimony.
The appellant did not object to the trial court's reversal of its initial ruling. Consequently, that ruling is not presented for review. Scruggs v. State, Ala.Cr.App., 359 So.2d 836, cert. denied, Ala., 359 So.2d 843 (1978); Pugh v. State, Ala.Cr.App.,355 So.2d 386, cert. denied, Ala., 355 So.2d 392 (1977).
AFFIRMED.
All the Judges concur.