The appellant, John Charles Spellman, was indicted and convicted by a jury for the offense of robbery in the third degree, which is proscribed by § 13A-8-43, Code of Alabama 1975. He was subsequently sentenced to a term of ten years' imprisonment.
The State's evidence tended to establish the following facts in support of the charge of robbery in the third degree.
On August 22, 1983, at approximately 1:40 A.M. Mr. Charles Grider went into the Zippy Mart in Ozark. The only other persons in the store at the time were the appellant Spellman and Ms. Cynthia Wolukka, the cashier.[1] When he entered, Grider overheard Spellman tell Ms. Wolukka that she owed him some money for some "dope." She replied that she did not owe him anything. As Grider was approaching the counter to pay for his selected items, he overheard Spellman warn Ms. Wolukka that if he did not get the money, he would kill her. Spellman then left.
Grider paid for his items and when he walked out of the store; Spellman, who was then outside, called to him. Spellman said, "Hey, have you got any money on you?" After Grider answered, "No," Spellman ordered, "Let me see your wallet." Again, Grider told him he had no money. Yet, Spellman grabbed Grider's wallet out of his back pocket and stated, "By the way, what you heard in that store, you better keep your mouth shut or I'll kill your ass." Grider then ran to his car and left.
Prior to trial, Spellman filed a motion for order in limine requesting that the trial court order the prosecution and its witnesses not to refer in any manner to the robbery, kidnaping, rape, or murder of Ms. Wolukka, which had occurred later on the same morning as the instant robbery. At a hearing on this motion, the prosecution argued that such testimony should be allowed for two reasons: (1) It was part of the res gestae of the crime charged, and (2) it buttressed Grider's explanation of why he did not notify the police of the crime charged until his third interview, which transpired several weeks after the robbery. The trial court initially ruled that the prosecution could elicit testimony about the events in the store prior to Grider's robbery, but it could only reveal the subsequent events only to explain Grider's reluctance to go to the police and only if the defense capitalized on Grider's delay in disclosing the robbery. Spellman now argues that this order was violated by the prosecution's repetitious elicitation of the facts that Ms. Wolukka had been robbed, kidnapped, and murdered on this same morning.
During Grider's direct examination, the prosecution attempted to elicit the reason behind Grider's initial reluctance to tell the entire story to the police. After several attempts, the following occurred:
 "Q. . . . [T]he first two times that you talked to the police did you tell them anything about this robbery?
"A. No, sir.
"Q. Why?
 MR. EMERY [defense counsel]: Judge, now we object —
"A. Because I was scared —
 MR. EMERY: We object to him asking him to express his mental operation as to why he didn't do something.
". . .
THE COURT: I overrule the objection.
". . .
 "A. Because I was scared after what had happened to Cynthia would happen to me.
 MR. EMERY: Judge, we object to that and we want to make a motion outside the presence of the Jury.
". . .
 MR. EMERY: Judge, . . . we object to them bringing up the fact that something happened to Cindy Wolukka at *Page 620 
this time. I don't think it's relevant to this case. I think they brought it up at the wrong time and they were instructed not to bring it up before the proper time. So, we move for a mistrial on that basis.
"THE COURT: Motion for a mistrial denied."
In the jury's presence, Grider continued his direct testimony as follows:
 "Q. Why did you not go to the police and report this robbery?
"A. My life was threatened.
 "Q. Why did you run from Mr. Spellman to go get in the car and take off?
"A. I was scared.
". . .
"Q. What had he done to scare you?
 "A. He robbed me for one, and then, you know — (Pause).
"Q. He had robbed you for one, and then what?
 "A. Well, what I had heard, you know, and everything just scared me."
After Grider's examination, Chief Benefield of the Ozark Police Department was called to testify. During a voir dire examination of Benefield prior to his testimony, defense counsel interposed the following objection:
 "What I'm objecting to is any testimony being offered by this witness concerning this robbery at the Zippy Mart and the robbery of Ms. Wolukka, and the murder of her, finding her body, and all that — I don't see how it has anything to do with this case. The only connection is that it happened approximately at the same time, but it has no probative value as to whether or not this man robbed Grider out in front of that store and that's what we're here today to discover. The only reason the State is bringing this up is to try to influence the Jury — we would ask that the State be instructed not to get into this investigation of the murder, not to get into the police going out there and what they found later that night — that morning because it has nothing to do with this case."
After further voir dire questioning, the trial court delivered the following ruling:
 "I think he can testify that he got the report that the cash register, or whatever was open, and that Ms. Wolukka was not there. That later on after he had talked to Mr. Grider [that] he went out to Houston and talked to Mr. Spellman, and then he can relate that conversation so far as it pertains to the Grider investigation. I do not think he should get into details concerning the Wolukka murder, kidnaping, or whatever. I think if we can limit it to no details, just the report and that he went there, later on he talked to Grider, after he talked to Grider he went to Houston and talked to Mr. Spellman. . . ."
However, the court later ruled that the prosecution could elicit evidence that Ms. Wolukka had been found dead later the same morning. Chief Benefield, over the objection of appellant, then testified before the jury that he had been notified about 2:30 a.m. on August 22 that "the clerk at the `Y' Zippy Mart on the Ft. Rucker Highway was missing, and that one of the cash register drawers had been cleaned out of all the currency;" that he went to the scene and verified this information; and that the clerk, Ms. Wolukka, had been "found dead" later that morning.
Appellant testified in his own behalf and denied knowing Charles Grider and Cindy Wolukka on a "personal basis." Appellant denied taking Grider's wallet and denied directing any threats at Grider.
Appellant raises one issue on appeal: Did the references to the murder of Ms. Wolukka deny appellant a fair trial? The State contends that such proof was relevant and material to explain why Grider did not report the robbery at the time it occurred, i.e., Grider was afraid that appellant had killed Ms. Wolukka and would also kill him. Secondly, the State argues that proof of Ms. Wolukka's murder was necessary to explain why Ms. Wolukka was not present to testify. The issues which we must decide are whether the testimony concerning the robbery of the Zippy Mart and the *Page 621 
murder of Ms. Wolukka was relevant, and if so, whether the probative value of this evidence was substantially outweighed by its potential for unfair prejudice to appellant.
It is generally recognized in Alabama and elsewhere that the trial court may exclude evidence, even though it is relevant, when it would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury.Valley Min. Corp., Inc. v. Metro Bank, 383 So.2d 158 (Ala. 1980); C. Gamble, McElroy's Alabama Evidence § 21.01 (4) (3d ed. 1977); 1 Wigmore, Evidence § 10a. (Tillers rev. 1983). Whether such evidence should be excluded because of its prejudicial nature is largely within the discretion of the trial court. Valley Min. Corp. Inc. v. Metro Bank; Roan v.Smith, 272 Ala. 538, 133 So.2d 224 (1961). The trial court is afforded broad discretion in its determination of the admissibility of evidence and this determination will not be disturbed absent a clear showing of abuse. Ward v. State,440 So.2d 1227 (Ala.Crim.App. 1983); Hinds v. State, 423 So.2d 1382
(Ala.Crim.App. 1982); 1 Wigmore at § 10a. The primary aim of the prejudice rule is to prevent jury misdecision. 1 Wigmore at § 10a.
In no event will evidence of other criminal acts be admissible unless a relationship between such acts and the defendant is established. 1 Wharton's Criminal Evidence § 240 (C. Trocia 13th ed. 1972). In the instant case there is no evidence in the record to connect appellant with the robbery of the Zippy Mart or the murder of Ms. Wolukka. Therefore, the only arguable basis for allowance of this evidence was as the State contends, i.e., to explain Grider's reluctance to come forward and to explain Ms. Wolukka's absence from trial. This evidence was clearly not a part of the res gestae or part of a continuous transaction under the facts presented. See McElroy'sAlabama Evidence at § 69.01 (3). It can be argued that this testimony would be relevant for the purposes stated; however, in our opinion it was highly prejudicial to appellant.
The main issue in this case is whether or not Spellman robbed Grider. The evidence pertaining to the robbery of the Zippy Mart and Ms. Wolukka's murder have little or no bearing on that main issue, and, having no substantial probative value, would serve mainly to confuse the issues in the minds of the jurors.Id. at 21.01 (3). The facts of this case present a unique situation. A real probability exists that the jurors would believe or conclude that appellant returned subsequent to robbing Grider, and made good on the threat Grider overheard, by killing Ms. Wolukka and robbing the Zippy Mart. We think it would be difficult, if not impossible, for the jurors to divorce this conclusion from their minds, and give Spellman a fair and impartial trial based upon the evidence pertaining to the robbery charge. A real probability exists that the jurors' knowledge of the robbery and murder of Ms. Wolukka aroused their emotions to such an extent that their ability to calmly and logically reason and examine the evidence was substantially impaired. Even if the evidence in question is material and relevant, as the State contends, the probative value of the evidence is clearly outweighed by its potential for unfair prejudice. See United States v. Spletzer, 535 F.2d 950 (5th Cir. 1976). The evidence was of relatively small or indefinite probative value and should have been excluded. It was not necessary to the State's case in chief that Ms. Wolukka testify or that the reasons for Grider's hesitancy to come forward be explained, unless brought into issue by the defense, which it was not.
The trial court should have sustained appellant's objection to the introduction of evidence of Ms. Wolukka's murder and the robbery of the Zippy Mart.
Had the court's motion in limine been adhered to no error or abuse sufficient for reversal would be present. However, the trial court's failure to sustain appellant's objection amounted to an abuse of discretion under the facts presented and, therefore, constituted reversible error. The judgment is due to be, and it is hereby, *Page 622 
reversed and the case is remanded to the trial court.
REVERSED AND REMANDED.
All Judges concur.
[1] During cross-examination, Grider confusingly suggested the presence of a third person.