The appellant, Clarence Jennings, was found guilty of robbery in the first degree and sentenced to 25 years' imprisonment.
The victim, drove into the parking lot of the Short Stop Convenience Store after spilling a drink in her car. She observed two men standing beside an ice machine located in front of the convenience store. *Page 93 
A moment later the same two men were standing in front of her car, looking in at her. The two men then walked past her car. She then finished cleaning up and, as she prepared to drive away, she felt a gun pressed to her temple. She looked up and saw one of the two men standing at the driver's window pointing a gun at her. The other man, whom she identified as the appellant, was standing at the passenger's side. The man with the gun told the victim not to look at him and to give him all of her money. The appellant unsuccessfully attempted to open the passenger door of the car and she then observed him walk to the front of the automobile. The man with the gun told her to hand him her purse. Her foot slipped off the brake pedal as she reached down to get her purse and her car rolled forward. The man with the gun screamed that he had told her "not to leave." She then lay over into the passenger seat, whereupon the man fired the pistol at her, striking her in the leg. The two men then fled from the parking lot.
 I
The appellant argues that his constitutional rights were violated in the hearing on his motion to suppress identification. Apparently, the appellant is arguing that the victim's photo-identification of the appellant was unreliable and the result of suggestive methods used by the police. The victim and Sergeant Mitchell testified during the motion to suppress. The victim testified to the events of the offense and, on cross-examination, gave a description of both the man on the driver's side and the man on the passenger's side of her automobile. She described the man on the passenger's side as taller than the other man and "not as stocky built." She further testified he had a "short type afro" which was more flat on top. She and Sergeant Mitchell testified that she went to the jail in order to view a lineup in which the appellant was not present. She did not identify anyone at that time. The defense counsel asked her if she was "under the impression that there was one or more suspects in the lineup"; she responded "no, I didn't know. He didn't explain anything to me about the lineup." Subsequently, Sergeant Mitchell brought the victim "a stack of pictures" and asked her to take a look at them. She picked from those pictures "the one that [she] knew was one of the perpetrators." Sergeant Mitchell testified that neither he nor anyone in his presence or to his knowledge made any suggestion to the victim as to who she should pick out or which picture to identify. The picture which she selected was a photograph of the appellant.
The appellant argues that the trial court erred in failing to allow the introduction of a report which Sergeant Mitchell was using to refresh his memory and which apparently indicated that one of the men had a missing tooth. The State never established that Sergeant Mitchell made out the report, although there was testimony that Sergeant Mitchell did not make any notes during his initial interview with the victim, rather, his first notes were made after a conversation he had with her while she was in the hospital. The State objected to the report as being hearsay and irrelevant. The trial court sustained the State's objection. The defense counsel, however, was allowed to ask Sergeant Mitchell whether he remembered which of the suspects it was that the victim had said was missing a tooth. Sergeant Mitchell indicated in response that he did not remember. Further, during the testimony of the victim, she stated that she never indicated that either man was missing any teeth and that she never observed their teeth.
While the quality of the victim's description of her assailant "[does] warrant cause for concern," this factor goes to the weight and credibility of the victim's identification rather than its admissibility. Johnson v. State,453 So.2d 1323, 1328 (Ala.Cr.App. 1984). " 'The question of whether the victim's identification was positive or not goes to the weight and credibility, and was a question for the jury.' Williams v.State, 348 So.2d 1101, 1104 (Ala.Cr.App.), cert. denied, Exparte Williams, 348 So.2d 1105 (Ala. 1977). See also Jones v.State, 415 So.2d 1233, 1236 (Ala.Cr.App. 1982)." Johnson v.State, supra, at 1328. *Page 94 
The victim's identification of the appellant was reliable when considered under "the totality of the circumstances and the factors outlined in Neil v. Biggers, 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and Manson v. Brathwaite,432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)." Ford v. State,426 So.2d 512, 513 (Ala.Cr.App. 1982).
 "The factors to be considered when [a] question is presented with reference to . . . the validity of the identification are set out in [Williamson v. State, 384 So.2d 1224 (Ala.Cr.App. 1980)]. These factors involve, in short, the opportunity of the victim to view the assailant at the time of the crime, the victim's degree of attention given to the defendant at the time, the accuracy of the victim's prior description, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the confrontation and the crime. A review of the evidence in this case, and applying these factors, leads us to the conclusion that there is nothing present in this case which would be sufficient to disallow the evidence of the identification of the accused in this case to go to the jury."
Minor v. State, 437 So.2d 651, 654 (Ala.Cr.App. 1983). See alsoJones v. State, 431 So.2d 1367, 1370-71 (Ala.Cr.App. 1983).
Applying these factors to the facts of this case, we conclude that the victim's identification was totally reliable.
"The test for determining the reliability of identification testimony following a pretrial identification procedure is whether the procedure was 'unnecessarily suggestive and conducive to irreparable mistaken identification.' "Phillips v. State, 409 So.2d 918, 919 (Ala.Cr.App. 1981), quoting Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967,1972, 18 L.Ed.2d 1199 (1967). The appellant argues that the trial court erred by not permitting him to ask whether the victim thought there were any suspects in the lineup which she viewed. However, "the mere fact that suspects are included within the lineup, and that witnesses know or assume this to be the case is an inescapable aspect of lineup identification procedure." United States v. Person, 478 F.2d 659, 661
(D.C. Cir. 1973). See also Phillips v. State, supra, at 919;McGee v. Estelle, 632 F.2d 476 (5th Cir. 1980). "In a series of cases . . ., this court has held that the fact 'that a person is actually told the suspect's photograph is among other pictures, although generally inadvisable, does not contaminate the identification proceeding.' " Ramsey v. State,441 So.2d 1065, 1066 (Ala.Cr.App. 1983). Moreover, "identification evidence derived from an unnecessarily suggestive source need not be excluded if the totality of the circumstances indicates its reliability." Johnson v. State, 453 So.2d 1323, 1327
(Ala.Cr.App. 1984). However, we find no proof of any suggestive methods used by the police in obtaining the victim's identification of the appellant.
 II
The appellant argues that the trial court improperly limited his voir dire during jury selection. Specifically, the appellant contends that the trial court erred in sustaining the State's objection to the defense counsel's question, "is there anybody that would disagree with this proposition, that eyewitness identification by strangers based upon fleeting observations made in stressful circumstances are frequently inaccurate?" The law in Alabama is well settled that,
 "in the process of selecting the jury from the venire afforded, each party has the right to have questions formulated by it propounded to the jury, either by the court or by the party as the court may determine, if such questions reasonably relate under the circumstances to the question of the qualification or interest or bias on the part of prospective jurors."
Griffin v. State, 383 So.2d 873, 876 (Ala.Cr.App. 1980), cert. denied, Griffin v. State, 383 So.2d 880 (Ala. 1980). The "controlling statute" regarding the right of either party to examine jurors as to their qualifications, interest, or bias was Title 30, Section 52, Alabama Code (1940), and the law of this statute has been carried forward, although not specifically included in Code of Alabama (1975): *Page 95 
 "The legal standard to be applied as regards voir dire questioning of the venire is the sound discretion of the court. The court determines how far counsel may go in asking questions of the jury on voir dire. The nature, the variety, and the extent of the questions are left to the trial court."
Dawkins v. State, 455 So.2d 220, 222 (Ala.Cr.App. 1984).
Reversal can only be predicated upon an abuse of that discretion. Edwards v. State, 452 So.2d 487, 494 (Ala.Cr.App. 1982), reversed on other grounds, 452 So.2d 503 (Ala. 1983);Ervin v. State, 399 So.2d 894 (Ala.Cr.App.), cert. denied,399 So.2d 899 (Ala. 1981). The appellant argues that the trial court abused its discretion and improperly limited the scope of his voir dire during jury selection because his main defense centered on the issue of the victim's identification of the appellant and the question he attempted to propound dealt directly with that issue. However, in Peoples v. State,375 So.2d 561 (Ala.Cr.App. 1979), "[t]he issue as to the identification of the defendant by the witness was the crucial issue in the case." Id., at 563. The defense counsel sought to ask the panel of prospective jurors whether any of them "during the course of their daily lives, had 'never mistaken a stranger for someone' such jurors had previously known or seen."Id.[1]
 III
The appellant contends that the trial court committed error by permitting the introduction of pictures of Gail Talley's car. Three pictures of her car, one of its rear and two of its interior, were admitted into evidence. There were bloodstains apparent in the interior of the car, apparently as a result of the victim's being shot. The appellant argues that the photographs serve no purpose except to arouse the passion, prejudice, or sympathy of the jury. The appellant contends that as he never claimed that the victim was not robbed or shot, rather his claim was that he did not do it, this evidence, as well as evidence that the jacket of a .32-caliber bullet was found in the car, should have been excluded. The test of relevancy sanctioned by the appellate courts of Alabama has been described as follows: "Under this liberal test, a fact is admissible if it has any probative value, however slight, upon a matter in the case." C. Gamble, McElroy's Alabama Evidence
§ 21.01(1) (3d ed. 1977).
 " 'Generally, a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion.' U.S. v. Penn, 721 F.2d 762 (C.A.Ala. [11th Cir.] 1983); U.S. v. Dothard, 666 F.2d 498
(C.A.Ala. [11th Cir.] 1982); Ward v. State, 440 So.2d 1227 (Ala.Crim.App. 1983); Wicker v. State, 433 So.2d 1190 (Ala.Crim.App. 1983). Evidence is relevant if it has 'any tendency to throw light upon the matter in issue, even though such light may be weak and falls short of demonstration.' McCain v. State, 46 Ala. App. 627, 247 So.2d 383
(1971); Austin v. State, 434 So.2d 289
(Ala.Crim.App. 1983). 'Any fact which has causal connection or logical relation to another fact, so as to make the other fact either more or less probable, is competent or relevant.' [Citations omitted.] Further, evidence is relevant if it has any probative value, however slight, upon a matter at issue in the case." *Page 96 
Mitchell v. State, 473 So.2d 591, 594 (Ala.Cr.App. 1985).
However, it is generally recognized that the trial court may exclude evidence, even though it is relevant, where the evidence would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury. C. Gamble, McElroy's Alabama Evidence § 21.01(4) (3d ed. 1977); 1J. Wigmore, Evidence § 10a (Tillers rev. 1983). Whether that evidence should be excluded on the basis of its prejudicial nature is largely within the discretion of the trial court. "The trial court is afforded broad discretion in its determination of the admissibility of evidence and this determination will not be disturbed absent a clear showing of abuse. Ward v. State, 440 So.2d 1227 (Ala.Crim.App. 1983);Hinds v. State, 423 So.2d 1382 (Ala.Crim.App. 1982); 1 Wigmore at § 10a." Spellman v. State, 473 So.2d 618, 621
(Ala.Cr.App. 1985).
"A photograph is properly admitted into evidence if it tends to prove or disprove some disputed matter, illustrates or elucidates some relevant fact or corroborates or disproves some other issue offered or to be offered." Murry v. State,453 So.2d 774, 775 (Ala.Cr.App. 1984), and cases cited therein. The appellant has not shown that the exhibits complained of caused him any prejudice by their admission into evidence. "The test for determining the admissibility of a photograph is whether it is a true and faithful representation of the place or subject it purports to represent as it existed at a time pertinent to the inquiry." Elmore v. State, 414 So.2d 175, 177 (Ala.Cr.App. 1982).
 "Photographs, if relevant, are admissible even though they might have a tendency to inflame the minds of the jury. Lawrence v. State, 409 So.2d 987
(Ala.Crim.App. 1982). Therefore, appellant's alternative argument that the photographs were prejudicial in that they had a probability of 'inflaming the jury' is not justifiable.
 "Alabama's evidentiary rule 'affords the trial court a wide and liberal latitude in the admission of photographs illustrative of a criminal transaction and the surrounding circumstances.' Lawrence, supra; Arnold v. State, 348 So.2d 1092
(Ala.Crim.App. 1977), cert. denied, Ex parte Arnold, 348 So.2d 1097 (1977); Lewis v. State, 339 So.2d 1035 (Ala.Crim.App. 1976), cert. denied, 339 So.2d 1038 (Ala. 1976)."
Hutto v. State, 465 So.2d 1211, 1212 (Ala.Cr.App. 1984). See also Ringstaff v. State, 451 So.2d 375, 381 (Ala.Cr.App. 1984).
This issue has previously been raised under similar circumstances in Arnold v. State, 348 So.2d 1092 (Ala.Cr.App. 1977), cert. denied Ex parte Arnold, 348 So.2d 1097 (Ala. 1977). In Arnold, this court held that photographs of the scene of the crime are admissible in evidence. "Here, [in Arnold] the photograph depicting blood of the robbery victim on the floor of the store that was robbed was properly admitted into evidence. Green v. State, 252 Ala. 513, 41 So.2d 566 (1949)."Arnold, at 1095. This court has also held admissible photographs of the interior of a slain officer's automobile.Harrell v. State, 470 So.2d 1303 (Ala.Cr.App. 1984), affirmedEx parte Harrell, 470 So.2d 1309 (Ala. 1985), cert. denied,Harrell, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Despite claims that the photographs were immaterial, this court found that they were illustrative of the crime scene and corroborative of witnesses' testimony. "A photograph 'is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description.' 23 C.J.S.Criminal Law, § 852(1)(a)(1961)." Harrell v. State, supra, at 1306.
 IV
The appellant contends that the trial court committed error by not permitting two witnesses to testify. The record indicates that the trial court asked the defense counsel to make a proffer of what he expected a witness, Robert Earl Jones, who was in custody, to testify to before deciding whether or not "to bring him down from the jail." Mr. Jones's lawyer was present in the courtroom. The defense counsel stated that he wished to call Mr. *Page 97 
Jones in order to prove that he and a man named Anthony Huggins were the actual perpetrators of the robbery. Thereafter, the trial court asked the defense counsel what proof he had that Mr. Jones was the perpetrator. The defense counsel's only proof was a statement by a Mr. Huggins to a Mr. Johnson around the time of the robbery indicating that "Robert Earl Jones is crazy." The defense counsel explained that he had not yet spoken to Mr. Jones.
The trial court called Augustus Johnson, the witness, who had allegedly heard the statement. Johnson testified that he was cutting his grass in an area located close to the convenience store on the day in question. He testified that Anthony Huggins ran up to him and said that Robert Earl Jones "is crazy as hell" and then "took off running again." The prosecutor objected to the testimony on the basis of hearsay and the trial court responded, "Not only that, it's totally irrelevant at this point." I fail to see any connection."
As to the testimony to be given by Robert Earl Jones, the defense counsel stated that, although he had not yet spoken to Jones, "I believe that were he [Jones] to testify and testify truthfully, his testimony would be to the effect that he was implicated in this robbery and that the person he was with was not Clarence Jennings." Thereafter, Jones's attorney indicated that were the court to allow the defense counsel to call Robert Earl Jones, he, Jones's attorney, would advise Jones not to testify at all. The only evidence which the defense counsel could proffer to indicate that Jones was one of the perpetrators was the statement made by Anthony Huggins that Jones was crazy.
Without determining whether the statement overheard by the witness was hearsay,[2] we find that the statement was irrelevant to this case.
Before evidence may be considered by a jury, it must fulfill certain minimum requirements of admissibility, including that of relevancy. "Evidence which is relevant has some tendency to make the existence of any fact or inference that is of consequence to the determination of the action more or less probable than it would be without the evidence." Dawkins v.State, 455 So.2d 220, 221 (Ala.Cr.App. 1984). "The determination of the relevancy of a particular item of evidence is left to the sound discretion of the trial judge and this court will not reverse unless that discretion has been grossly abused." Wicker v. State, 433 So.2d 1190, 1198 (Ala.Cr.App. 1983). See also Hembree v. City of Birmingham, 381 So.2d 664,668 (Ala.Cr.App. 1980); McLeod v. State, 383 So.2d 207, 208-09
(Ala.Cr.App. 1980); Dawkins v. State, supra, at 222.
 "In Dennard v. State, 405 So.2d 408, 410
(Ala.Cr.App. 1981), this court, quoting from Hill v. State, 366 So.2d 296, 314 (Ala.Cr.App. 1978), aff'd, 366 So.2d 318 (Ala. 1979), stated:
 " 'Evidence to be competent and admissible must be relevant. That is to say, evidence must tend to prove or disprove the issues before the jury. The determination of the relevancy or lack of relevancy of particular evidence rests largely in the sound discretion of the trial judge. It is, therefore, the duty of the trial judge to limit evidence to the points in issue so that the attention of the jury is not distracted, nor withdrawn from the primary issues, to be directed towards foreign matters or issues of questionable or doubtful relevancy.' (Citations omitted.)"
 "The trial court may exclude evidence when it is such as to furnish a basis for nothing more than mere conjecture or remote inferences in reference to the transaction under investigation. Hadnot v. State, 3 Ala. App. 102, 57 So. 383, 384 (1912)."
Trawick v. State, 431 So.2d 574, 578 (Ala.Cr.App. 1983).
Thus, to be admissible, the proffered evidence must tend "to prove or disprove the main inquiry of the case." McLeod v. *Page 98 State, 383 So.2d 207, 209 (Ala.Cr.App. 1980), and cases cited therein.
 "Where the relevancy is not apparent in the question itself, the trial court will not be put in error for sustaining an objection unless the relevancy is made to appear. Alberson v. State, 254 Ala. 87, 91, 47 So.2d 182 (1950). 'When error is predicated upon an exception to the ruling of the trial court in sustaining an opposing party's objection to questions propounded to a witness, error cannot be incurred, unless the trial court was made aware of what testimony the question was expected to elicit and unless it further appears that it was material to the issues in the case.' Chesson v. State, 435 So.2d 177, 179 (Ala.Cr.App. 1983); Coburn v. State, 424 So.2d 665
(Ala.Cr.App. 1982)." (Emphasis in Chesson.)
Morris v. State, 465 So.2d 1173, 1178 (Ala.Cr.App. 1984), reversed on other grounds, Ex parte Morris, 465 So.2d 1180
(Ala. 1985).
"In the instant case the inferences to be drawn from the proffered testimony were too speculative as to illustrate a reasonable connection between the testimony and a legitimate purpose for which it could be introduced." Hembree v. City ofBirmingham, 381 So.2d 664, 668 (Ala.Cr.App. 1980). The burden was on the appellant to make clear to both the trial court and this court on appeal how the proffered testimony would show the appellant's innocence and Robert Earl Jones's guilt. He has failed to do so.
 V
The appellant argues that the trial court committed error by overruling his objection to the prosecutor's closing argument. The record indicates that the following statement was made by the prosecutor during his closing argument, "Fingerprints don't just jump out and say get me, get me." The defense counsel objected to the comment, stating that there was "no testimony whatsoever that there was an attempt made to get fingerprints." The trial court overruled the defense counsel's objection, stating that the prosecutor's remark was "a reply in kind." The defense counsel's closing argument was not included in the record; therefore, it is impossible to determine whether or not the prosecutor's statement was indeed a reply in kind.
 "This court has held on many occasions that in order to determine whether the above statement of the prosecutor was improper, 'it must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer.' [Citations omitted.] The rule in Alabama is that remarks or comments of the prosecuting attorney, including those which might or would otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements."
Boggan v. State, 455 So.2d 228, 238 (Ala.Cr.App. 1984). "We note that wide latittude is given a district attorney in making reply in kind, Richardson v. State, 354 So.2d 1193 (Ala.Cr.App. 1978), and the propriety of argument of counsel is largely within the trial court's discretion. McCullough v. State,357 So.2d 397 (Ala.Cr.App. 1978)." Jetton v. State, 435 So.2d 167,171 (Ala.Cr.App. 1983). "[C]ontrol of closing arguments rests in the broad discretion of the trial judge and where no abuse of discretion is found, there is no error. [Citations omitted.] The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse." Henderson v.State, 460 So.2d 331, 333 (Ala.Cr.App. 1984). Because we are unable to discern the nature of the defense counsel's closing statement and we are further unable to determine the context in which the allegedly improper statement was made, we decline to find any abuse of discretion by the trial court in overruling the appellant's objection.
 VI
The appellant contends that error was committed in the trial court's charge to the jury. Specifically, the appellant contends that the trial court erred in refusing to give his requested jury charge concerning "the need for the jury to weigh identification *Page 99 
testimony critically." He further alleges error in the trial court's instructions that "the purpose of punishment for crime is two-fold, first to punish a person for his crime against society and, second, to deter or stop others from committing like or similar offenses." The record indicates that the appellant's requested jury charge was adequately covered in the trial court's oral charge to the jury. Because these refused requested charges were "substantially and fairly" covered in the trial court's instructions, we hold that the refusal to give the appellant's charges was within the discretion of the trial court and was not prejudicial error. Franklin v. State,405 So.2d 963, 966 (Ala.Cr.App. 1981), cert. denied,405 So.2d 966 (Ala. 1981). See also § 12-16-13, Code of Alabama (1975).
Furthermore, we find no merit to the appellant's claim concerning the trial court's instruction as to the two-fold purpose of punishment. Any error by the trial judge in so instructing as to the role of punishment, was harmless and should be treated as "extraneous instruction," because the jury does not determine punishment. See Greer v. State,475 So.2d 885, 887 (Ala.Cr.App. 1985); Rule 45, Alabama Rules of Appellate Procedure.
AFFIRMED.
All the Judges concur.
[1] Although the prosecutor interrupted the defense counsel's attempted question, the question stated was agreed upon as the question sought to be asked. In upholding the trial court's sustaining of the prosecutor's objection to the attempted question, this court stated:
 "Such would have been valid argument for defendant at the time for argument in the trial of the case, and doubtless such argument was made, but questions that border on argument should be avoided while prospective jurors are being interrogated by the parties during the process of the selection of a jury."
Id., at 563. See also Radford v. State, 348 So.2d 880, 885
(Ala.Cr.App. 1977) (wherein the attempted question was found to be an indirect inquiry as to what weight the jury might give certain testimony, "an area normally reserved to requested charges or to the oral charge of the trial judge" and thus fell within "that area over which the trial court has considerable discretion").
[2] It is not clear that the statement was to be introduced to prove the matter asserted, i.e., that Robert Earl Jones was crazy, rather than for some other purpose.