WISE, Judge.
The appellant, Quincy Peoples, was convicted of one count of felony murder, a violation of § 13A-6-2, Ala.Code 1975,[1] and one count of attempted murder, a violation of §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. Peoples was sentenced to two consecutive terms of life imprisonment and was ordered to pay $4,749.26 in restitution, a $100 assessment to the crime victims’ compensation fund, and court costs.
The evidence presented by the State tended to establish the following. On the evening of February 6, 2004, Quincy Peoples and several friends left a nightclub called “The Sanctuary” after a member of their party, Leonard Tolbert, was asked to leave the nightclub for arguing with Kenneth Washington. Peoples and his friends[2] then traveled to a nearby Waffle House restaurant where they saw Washington getting a ride home from Donald Cotton. Peoples and his passengers got in Peoples’s vehicle and followed Cotton’s vehicle. As Peoples pulled alongside Cotton’s vehicle, Leonard Tolbert and Nicholas McCary, passengers in Peoples’s vehicle, opened fire. Washington was killed instantly; Cotton was shot several times but survived.
Peoples, however, testified to a much different chain of events. Peoples stated that he became intoxicated at The Sanctuary and that he subsequently traveled to the Waffle House restaurant. Peoples stated that after leaving the Waffle House, McCary and Morrow were whispering in the backseat and that he did not hear what they were saying. Shortly thereafter, Peoples’s vehicle became stuck in traffic— behind a tractor-trailer truck and next to a white sport-utility vehicle (“SUV”). Peoples stated that the SUV started to slow down and that the occupants of the white SUV opened fire and the bullet hit the vehicle he was driving. Peoples further stated that he did not assist in the ambush of the victims, but instead, tried to get away from the white SUV. Peoples then explained that he was shocked by what had transpired and started to slow down but that McCary threatened him. Lastly, Peoples stated that he was unaware at any *758 time that there were plans to open fire on the victims’ vehicle.
At trial, Peoples sought to discredit the testimony of Leonard Tolbert by attempting to prove that Tolbert and Adam Morrow, another passenger in Peoples’s vehicle at the time of the incident, were given deals by the State in exchange for their testimony against him. In an effort to further prove the existence of a deal between the State and Tolbert, Peoples questioned Officer Shaun Rankin as to why Tolbert had five other cases pending against him that were all continued.
After both sides had rested and the trial court had instructed the jury on the law applicable to Peoples’s ease, the jury convicted Peoples of one count of felony murder and one count of attempted murder. This appeal followed.
I.
Peoples first argues that the evidence presented at trial was insufficient to sustain convictions for both felony murder and attempted murder. The gist of Peoples’s defense was that he did not know that his passengers intended to pull out guns and shoot at the occupants of another vehicle as he drove down the highway. Thus, he claims, he lacked the intent to commit either capital murder or attempted murder.
Initially, we note that Peoples was not convicted of capital murder but of the lesser-included offense of felony murder. Under the circumstances of this case, felony murder was a lesser-included offense of capital murder. As this Court explained in Mitchell v. State, 706 So.2d 787, 800 (Ala.Crim.App.1997):
“Felony murder committed by shooting into an occupied vehicle is a lesser included offense to the capital offense of ‘[mjurder committed by or through the use of a deadly weapon while the victim is in a vehicle.’ § 13A-5-40(a)(17), Ala. Code 1975. The only difference between capital murder under § 13A-5-40(a)(17) and felony murder committed by shooting into an occupied vehicle under § 13A — 6—2(a)(3) and § 13A-ll-61(b) is the element of intent. ‘[Fjelony murder does not require intent to kill; the only intent necessary is the intent to commit the underlying felony.’ George v. State, [717] So.2d [827] (Ala.Cr.App.), rev’d on other grounds, [717] So.2d [844] (Ala.1996). ‘By definition, a murder must be intentional to constitute a capital offense. § 13A-5-40(b).’ D.D.A. v. State, 650 So.2d 571, 577 (Ala.Cr.App.1994) (citing § 13A-5-40(b), Ala.Code 1975).
“Under the facts of this case, felony murder based on the felony of shooting into an occupied vehicle is also a lesser included offense of the capital offense of ‘[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct.’ § 13A-5-40(a)(10), Ala. Code 1975. Here the two victims were shot while they sat inside a vehicle. Again, to support capital murder the state must prove that the shooter had the intent to kill. ‘[F]elony murder does not require intent to kill; the only intent necessary is the intent to commit the underlying felony.’ George, supra.
“ ‘Here, the killing was committed during a felony and the effect of the trial judge’s instruction was to permit the jury to convict the appellant of the capital offense “if they found that he either intentionally killed [Houston and King] or that he ... caused [Houston’s and King’s] death in the commission of the [felony],
[[Image here]]
“ ‘. [Wjhether the appellant intended to kill the victim[s] during the commission of a [felony] was a ques *759 tion for the jury.... [T]he evidence presented by the State would support a conviction for felony murder, which has no intent requirement, as well as a conviction for the charged capital offense.’
“Starks v. State, 594 So.2d 187, 194-95 (Ala.Cr.App.1991) (citations and footnote omitted) (defendant convicted of capital murder during a robbery where the evidence was that a killing was committed during a planned robbery but there was no evidence of a plan to kill). ‘Whether the accused possesses the intent to cause the death of another person is a matter to be determined by the jury.’ Paige v. State, 494 So.2d 795, 796 (Ala.Cr.App.1986). The trial court properly included felony murder in its jury charge.”
Although Peoples was not the triggerman, he may nevertheless be convicted of felony murder as an aider and abettor of the principals. As we noted in Peraita v. State, 897 So.2d 1161, 1210 (Ala.Crim.App.2003):
“Alabama’s accomplice liability statute provides:
“ ‘A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
“ ‘(2) He aids or abets such other person in committing the offense.... ’
“ § 13A-2-23, Ala.Code 1975.
“ ‘The words “aid and abet” encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936 (Ala. Crim.App.1986) ]; Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. “The jury is to determine whether the appellant’s participation exists and the extent of it from the conduct of the parties and all the testimony presented.” Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App.1979), cert. denied, Ex parte Walls, 378 So.2d 1193 (Ala.1980). Such facts as the defendant’s presence in connection with his companionship, and his conduct at, before and after the commission of the act, are potent circumstances from which participation may be inferred.’
“Henry v. State, 555 So.2d 768, 769 (Ala.Crim.App.1989).
“ ‘Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal.... No particular acts are necessary to make one an aider and abettor; the common enterprise or adventure may have been entered into on the spur of the moment without prearrangement or participation.’
“Scott v. State, 374 So.2d 316, 318-19 (Ala.1979). And,
“ ‘ “[wjhere the evidence is conflicting as to the defendant’s connection as an accomplice or co-conspirator, a jury question is presented.” Sanders v. State, [423 So.2d 348 (Ala.Crim.App. 1982) ], citing Watkins v. State, 357 So.2d 156, 160 (Ala.Cr.App.1977), cert. denied, 357 So.2d 161 ([Ala.] 1978).’
“Henry, 555 So.2d at 770.”
Contrary to Peoples’s claim, there was sufficient evidence from which the jury could conclude that Peoples aided and *760 abetted Tolbert and McCary in the shooting of Kenneth Washington and Donald Cotton. Peoples was present and witnessed the argument between Tolbert and Washington at The Sanctuary, resulting in Peoples and his companions being asked to leave the nightclub. Later, as the group sat at a nearby Waffle House restaurant, they saw Washington getting a ride home from Donald Cotton. Directed by his passengers, Peoples followed Cotton’s vehicle onto the interstate. As Peoples pulled alongside Cotton’s vehicle, Tolbert and McCary opened fire, killing Washington and wounding Cotton. Based on this evidence, the jury reasonably concluded that Peoples was an accomplice in Washington’s murder.
However, because the jury convicted Peoples only of the lesser-included offense of felony murder, its verdict served to find that Peoples lacked the specific intent to kill that was necessary to support a conviction for attempted murder. See Ex parte Dorsey, 881 So.2d 533, 537 (Ala.2003) (citing Travis v. State, 776 So.2d 819 (Ala.Crim.App.1998), aff'd, 776 So.2d 874 (Ala.2000), cert. denied, 531 U.S. 1081, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001)). The jury’s verdict finding Peoples guilty of the lesser-included offense of felony murder necessarily acquitted him of the charge of attempted murder. Accordingly, we must remand this case to the trial court for that court to vacate the attempted-murder conviction and resulting sentence.
II.
Peoples next alleges that the trial court improperly sustained the State’s objections concerning the pending charges against Leonard Tolbert and otherwise prevented him from impeaching Tolbert on cross-examination.
During the cross-examination of Tolbert by one of Peoples’s attorneys, the following occurred:
“Q [Defense counsel]: Do you remember when you gave that first statement to Detective Yerby?
“A [Tolbert]: The first one?
“Q: Yes, sir.
“A: Yes, sir.
“Q: And did he read you your rights? “A: Yes, sir.
“Q: And that, of course, frightened you I’m sure, didn’t it?
“A: No, sir. It ain’t — it ain’t been the first time I had [my] rights read to me.
“Q: That isn’t the first time?
“A: No, sir.
“Q: And you’ve got some charges pending right now, don’t you?
“MS. REYNOLDS [Prosecutor]: Judge—
“MR. WALLACE [Defense counsel]: Judge—
“THE COURT: Sustained.
“MS. REYNOLDS: He knows that is absolutely improper.
“MR. WALLACE: Actually—
“THE COURT: We’re going to have a sidebar on that.
“MR. WALLACE: That’s fine.
“(Bench conference)
“THE COURT: The prosecutor’s objection is sustained and the jury is directed to disregard that question. Do not consider that when you are back there deliberating this case. Can you all do that?
“(Affirmative response)
“THE COURT: Is there anyone who cannot follow that instruction?
*761 “(No response)
“THE COURT: Let the record reflect that there are no jurors who raised their hands. Okay, go ahead.”
(R. 332-33.)
In Reeves v. State, 807 So.2d 18 (Ala.Crim.App.2000), this Court stated:
“It is well settled that ‘[a] party is entitled to a thorough and sifting cross-examination of the witnesses against him,’ McMillian v. State, 594 So.2d 1253, 1261 (Ala.Crim.App.1991), remanded on other grounds, 594 So.2d 1288 (Ala.1992), opinion after remand, 616 So.2d 933 (Ala.Crim.App.1993), citing Perry v. Brakefield, 534 So.2d 602 (Ala.1988), and § 12-21-137, Ala.Code 1975, and that a party should be given ‘wide latitude on cross-examination to test a witness’s partiality, bias, intent, credibility, or prejudice, or to impeach, illustrate, or test the accuracy of the witness’s testimony or recollection as well as the extent of his knowledge.’ Williams v. State, 710 So.2d 1276, 1327 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). It is equally well established, however, ‘that the latitude and extent of cross-examination are matters which of necessity rest largely within the sound discretion of the trial court, and rulings with respect thereto will not be revised on appeal except in extreme cases of abuse.’ Long v. State, 621 So.2d 383, 388 (Ala.Crim.App.1993), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993), quoting Beavers v. State, 565 So.2d 688, 689 (Ala.Crim.App.1990). ‘The trial judge may reasonably limit the range of cross-examination on matters that are repetitious, argumentative, collateral, irrelevant, harassing, annoying, or humiliating.’ Newsome v. State, 570 So.2d 703, 714 (Ala.Crim.App.1989). ‘On appeal, the party claiming an abuse of such discretion bears the burden of persuasion.’ Ross v. State, 555 So.2d 1179, 1180 (Ala.Crim.App.1989), quoting Hem-bree v. City of Birmingham, 381 So.2d 664, 666 (Ala.Crim.App.1980).
“Rule 616, Ala.R.Evid., provides that ‘[a] party may attack the credibility of a witness by presenting evidence that the witness has a bias or prejudice for or against a party to the case or that the witness has an interest in the case.’ Generally, this rule permits cross-examination, and the introduction of independent evidence, regarding statements, acts, or relationships indicating bias or prejudice, including arrests, indictments, and pending charges that have not resulted in convictions even though such ‘bad acts’ are generally inadmissible under Rules 608 and 609, Ala.R.Evid. See, e.g., C. Gamble, McElroy’s Alabama Evidence, § 149.01(8)(a) (5th ed.1996).”
807 So.2d at 38-39.
As seen from the record excerpt, this was not a situation in which the trial court decided sua sponte to prevent the defense from arguing the merits of this claim. Rather, the record indicates that the trial court interrupted the State’s objection and defense counsel’s response to sustain the objection. Moreover, the court indicated its intent to take the matter up in a bench conference. Indeed, the record indicates that a bench conference was conducted; however, no transcript of that conference is contained in the record. Thus, we are unable to determine what occurred during the bench conference or what arguments were made by counsel. “[T]his Court is bound by the record on appeal; an appellate court ‘ “may only consider the facts contained in the record on appeal, and it may not presume any facts not shown by that record and make them a ground for reversal.” ’ ” Johnson v. State, 823 So.2d 1, 22 (Ala.Crim.App.2001) (quoting Pressley v. State, 770 So.2d 115, 123 *762 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.2000), quoting in turn Carden v. State, 621 So.2d 342, 346-47 (Ala.Crim.App.1992)). Absent a transcript of the bench conference, we cannot say that the court abused its discretion when it sustained the State’s objection.
Moreover, even assuming that the court’s action was error, this Court has recognized that the denial of a defendant’s opportunity to impeach a witness for bias is subject to a harmless-error analysis. See Smith v. State, 795 So.2d 788, 819 (Ala.Crim.App.2000) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). As indicated from the record excerpt above, Tolbert’s credibility was suspect, at best, following his admission that Detective Yerby’s advising him of his constitutional rights did not frighten him because it was not the first time that he had been informed of his rights. Tolbert’s testimony clearly indicated that he had a history of prior arrests and placed his credibility at issue — just as allowing defense counsel to question Tol-bert regarding his pending charges.
Finally, both Leonard Tolbert and Adam Morrow were passengers in the vehicle Peoples was driving on the night of the shooting. The testimony of both witnesses was substantially the same. Had Tolbert been the State’s only witness, any limitation of his cross-examination may have prejudiced Peoples’s substantial rights. However, because Tolbert’s testimony and Morrow’s testimony were essentially the same, the trial court did not commit reversible error when it limited the cross-examination of Tolbert.
III.
Peoples’s third claim is that the trial court improperly charged the jury as to felony murder.
“ ‘A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case. Coon v. State, 494 So.2d 184 (Ala.Cr. App.1986). When requested charges are either fairly and substantially covered by the trial judge’s oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges. Ex parte Wilhite, 485 So.2d 787 (Ala.1986).’
“Ward v. State, 610 So.2d 1190, 1194 (Ala.Cr.App.1992).”
Hemphill v. State, 669 So.2d 1020, 1021 (Ala.Crim.App.1995) (emphasis omitted).
Our review of the record indicates that the trial court’s oral charge fairly and substantially covered Peoples’s requested instruction on felony murder. The Court stated:
“A person commits the crime of felony murder if he, or another participant, caused the death of another person, and in performing the acts or acts which caused the death of that person, he or another participant, intended to commit the underlying felony, which is shooting into an occupied vehicle. ...”
(R. 625.) Moreover, Rule 21.1, Ala. R.Crim.P., provides in part:
“The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s oral charge or in other charges given at the request of the parties.”
Contrary to Peoples’s claim, the trial court’s instruction did not mislead the jury regarding the intent necessary to support a conviction for felony murder. Rather, the court’s instruction addressed the issue of how Peoples, as an accessory, could be *763 guilty of felony murder. Therefore, the instruction was not erroneous. Based on the foregoing, Peoples’s claim that the jury was improperly charged fails.
IV.
Peoples’s last claim is that the trial court erred in denying his motion for a mistrial. Specifically, he argues that a portion of the State’s closing was so prejudicial that he was entitled to a mistrial. During closing statements, the State said:
“And you notice they did not ask [Detective] Yerby one thing about the white SUV. Not one. Why is that? Could it be because that is a defense that the defendant has thought up since that deposition was taken.”
(R. 599.)
Initially, we note that this claim is precluded from appellate review by Rule 28(a)(10), Ala.R.App.P., because Peoples did not include the required citation to appropriate authority in support of his contention in this regard. Harrison v. State, 905 So.2d 858, 860 (Ala.Crim.App. 2005).
In any event, the prosecutor’s remark did not entitle Peoples to a mistrial. Alabama courts have repeatedly held that a mistrial is a drastic remedy, to be used sparingly and only to prevent manifest injustice. The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court’s ruling on a motion for a mistrial will not be overturned absent a manifest abuse of that discretion. See, e.g., Banks v. State, 919 So.2d 1223 (Ala.Crim.App.2005); Bryant v. State, 727 So.2d 870, 877 (Ala.Crim.App. 1998). We note, too, that a prosecutor is allowed during closing argument to draw reasonable inferences from the evidence presented. In evaluating allegedly prejudicial remarks by the prosecutor during closing argument, the court must judge each case on its own merits and evaluate the remarks in the context of the entire trial. The trial court is permitted wide discretion in regulating the arguments of counsel. Ex parte Loggins, 771 So.2d 1093, 1101 (Ala.2000).
Here, the State merely pointed out in the first interview with Detective Yerby of the Vestavia Police Department that Peoples made no mention of a white SUV and further argued that this theory had been generated only after Yerby arrested Peoples. Thus, the trial court was correct in denying Peoples’s motion for a mistrial based on prejudicial comments in the State’s closing argument.

Conclusion

Based on the foregoing, Peoples’s conviction for felony murder is affirmed. However, for the reasons set out in Part I of this opinion, Peoples’s conviction for attempted murder is reversed and due to be set aside. This case is remanded to the trial court for further proceedings consistent with this opinion. On remand the court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days of the release of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED. 
McMILLAN, P.J., and COBB and SHAW, JJ., concur; BASCHAB, J„ concurs in the result.

. Peoples was charged with murder made capital because it was committed through the use of a deadly weapon while the victim, Kenneth Washington, was in a vehicle. See § 13A-5-40(a)(17), Ala.Code 1975. The jury, however, convicted Peoples of the lesser-included offense of felony murder.

. Those riding with Peoples were Nicholas McCary, Adam Morrow, Lester Carrington, and Leonard Tolbert.